SUPREME COURT    Albany General Term, May, 1851.  *Watson,*
*Parker* and *Wright,* Justices.

## HOUGHTALING *vs.* KELDERHOUSE and others.

A person convicted of perjury is an incompetent witness, though he has been pardoned by the governor, and the pardon purports to restore him to all his civil rights, the legislature having provided that such convict shall not be received as a witness till such judgment be reversed. Such is the law, though the exclusive power of pardon be vested in the governor.

Such incapacity to testify is the result of a rule of evidence and not a punishment of the offence.

Where a defendant proves the making of an admission by the plaintiff, the latter has a right to give evidence in explanation of the admission and to have the witness state all that was said upon the subject at the time.

This suit was originally commenced before a justice of the peace in assumpsit on a promissory note. The defence was usury. The plaintiff recovered before the justice on the 4th of September, 1846. The defendant appealed, and the cause was tried in the Albany common pleas, where the plaintiff also recovered. On the trial in the court of common pleas, several exceptions were taken by the defendant's counsel, who brought a writ of error to this court. The facts appear sufficiently in the opinion of the court.

*H. G. Wheaton,* for the plaintiff.

*R. W. Peckham,* for the defendant.

*By the Court,* PARKER, J. The most important question in this case is whether James R. Brice, who was offered on the part of the defence, was a competent witness? It appeared that he had been convicted of perjury in this state and sent to the state prison in 1834, and was pardoned by the governor in 1840. The pardon expressly purported to restore him to all his civil rights. The court below held he was still incompetent as a witness, under our statute, and refused to admit him to testify; to which decision the defendant's counsel excepted.

The statute (2 *Rev. Stat.* 567, 2d ed. § 1] provides that a person convicted of perjury "shall not thereafter be received as a witness to be sworn in any matter or cause whatsoever, until the judgment against him be *reversed.*" In all other cases of felony the person convicted is declared incompetent to testify unless he be pardoned [2 *Rev. Stat.* 586, § 23]. The statute, therefore recognizes the efficacy of a pardon, to restore the competency of a witness in all cases of conviction, except for perjury.

It is urged by the defendant's counsel that inasmuch as the exclusive and full power to pardon, for all offences except treason and in cases of impeachment, was vested by the constitution in the governor [*Const. of* 1821, *art.* 3, § 5], the legislature had no power to restrict the operation of the pardon, in a case of perjury; and that therefore the effect of the pardon in question was to render Brice a competent witness.

The doctrine of a restoration of the competency of a witness by pardon, is comparatively of modern origin. Lord Coke (2 *Buls.* 154) is an authority against it. The maxim recognized was *Poena potest tolli, culpa perennis erit.*" But at a later day the doctrine was established by Lord Holt and others, in several decisions. (*Rex* v. *Ford,* 2 *Salk.* 691; *Rex* v. *Greepe, id.* 514; *Rex* v. *Crosby, id.* 689; 3 *Salk.* 155.) It was then held that when the conviction was at common law, in which case an inference was only a consequence of the judgment, the king's pardon restored the party to his testimony; but when the conviction was for perjury, upon the statute, the person convicted could not be restored to his credit by the king's pardon; and the reason assigned was that by the statute it was part of the judgment that he be infamous and lose the credit of testimony. In such case it was held he might be restored by a statute pardon. (2 *Salk.* 691; *Dives* v. *Mestayer,* 5 *Esp. Rep.* 94; *Bull. N. P.* 292; *Phil. & Ames on Ev.* 21, 22; 2 *Harg. Jur. Arg.* 221.) The statute on which that opinion was based was 5 *Eliz. Ch.* 9, § 6, which provided that when a person was convicted of perjury under that act "the oath of such person or persons so offending, from thenceforth shall not be received in

any court of record within this realm of England and Wales, or the marches of the same, until such time as the judgment given against the said person or persons shall be reversed by attaint or otherwise."

The cases above cited show that in England, in case of a conviction under this statute, competency as a witness might be restored by a statute pardon, though the king's pardon was ineffectual for that purpose. And it is claimed that inasmuch as in this state the legislature has no power to pardon for such offence, but the exclusive power is vested in the governor, his pardon must be effectual to restore the convict's competency. This is certainly very plausible reasoning; and if there were no interests concerned except those of the convict, that is to say, if the incompetency to testify was merely a punishment for the offence, I should deem the position impregnable. It must be conceded that full power to pardon in case of perjury is vested in the governor; and I think that power exclusive. In this respect the distribution of powers, in our state, differs somewhat from that of the English government, where pardons may sometimes be granted by act of parliament. (2 *Black. Com.* 402; *Fort.* 43; 2 *Hawk. P C.* 397.)

But though the legislature of our state has no authority to grant a pardon for perjury, it has full power to say who shall be competent witnesses. It may by statute admit or exclude any class of persons, such as parties, or persons interested, or those convicted of crimes. The admissibility of all witnesses is a matter entirely within legislative control and subject to its regulation. It is true the disqualification of a person convicted of perjury may operate, to some extent, as a punishment of the convict. But whether such testimony shall be received, is a question in which others have a much larger interest. It is a question of public policy, with regard to which there may well be differences of opinion. On the one side, it may be said parties ought not to be deprived of such testimony, at the hazard of being unable to establish a legal right. On the other hand, it may be urged that such testimony would be dangerous to the rights of litigants, and unsafe in the administration of

justice. The legislature, in deciding this question, have regarded the latter argument as outweighing the former, and have excluded the evidence. And although this disqualification has been regarded as part of the judgment, yet I think it not merely a penalty for the offence, but an enactment of a rule of evidence within the legislative jurisdiction and beyond the reach of an executive pardon. I concur entirely in the view on this subject expressed by a writer in the American Jurist (11 *Am. Jurist*, 360), who says, " But although an incapacity to testify, especially considered as a mark of infamy, may really operate as a severe punishment upon the party, yet there are other considerations, affecting other parties, which may well warrant his exclusion from the halls of justice. It is not consistent with the interests of others, nor with the protection which is due to them from the state, that they should be exposed to the peril of testimony from persons regardless of the obligation of an oath; and hence on grounds of public policy, the legislature may well require that, while the judgment itself remains unreversed, the party convicted shall not be heard as a witness. The statute of Elizabeth itself seems to place the exception on the ground of a rule of evidence and not on that of a penal fulmination against the offender. The intent of the legislature appears to have been not so much to punish the party by depriving him of the privilege of being a witness or a juror, as to prohibit the courts from receiving the oath of any person convicted of disregarding its obligation."

It will be observed that the language of our act is very similar to that of the English statute. Both declare that the testimony shall not be received. The writer in the Jurist above quoted, commented on the fact that the act of Congress (*Stat. of U. S. Ap.* 3, 1790, § 18) which declares the offender shall thereafter be rendered *incapable of giving testimony*, &c., until such judgment be reversed, has more the appearance of a penalty upon the offender than the language of the English act. But the statute of this state is certainly liable to no such criticism, and I doubt whether it will be recognized whenever the question shall arise under the act of Congress. It seems to me that

Houghtaling *v.* Kelderhouse.

whether the statute provides that he shall be incapable of giving testimony, or says that his testimony shall not be received, in either case it will be viewed as a rule of evidence, though it may also be a punishment of guilt.

This view of the law is taken in 1 *Greenleaf's Evidence* 378 (note) and was acted upon by Chancellor Kent in *Holdredge* v. *Gillespie* (2 *Johns. Ch. Rep.* 35), who excluded the deposition of a witness that had been convicted of perjury, though he had been pardoned by the governor, on the ground that the statute declared him incompetent till the judgment was reversed. The statute then in force (1 *Rev. Laws*, 171) was similar to the provision of the revised statutes above quoted.

It is said a construction ought not to be given to the statute that would deprive the governor of the power to relieve by pardon, when it might be discovered, too late to obtain a reversal of the judgment, that the party was innocent. The answer is that if the legislature has power to deprive others of the benefit of his testimony, they must also have power to restore it. And the parties interested, so far from being remediless, would have only to apply to the legislature instead of the governor for relief. I am therefore of the opinion that the court below decided correctly in rejecting Brice as a witness.

There were other exceptions taken on the trial in the court below that remain to be considered. After the plaintiff had rested, the defendants called Robert Frazier, and proved by him an admission made by the plaintiff that he was in danger of losing the amount of the note in question, because he had received more than lawful interest. The plaintiff's counsel then cross examined the witness. In the course of the cross examination the witness testified that the plaintiff said "he had received a new note, and that was worse than the old one." On a further direct examination the defendant's counsel asked the witness if the plaintiff stated why the new note was worse than the first? This was objected to by the plaintiff's counsel, and the answer was excluded by the court; to which decision the counsel for the defendant excepted. This decision was clearly erroneous. There was no objection to the form of the

question. The plaintiff's counsel had called out an additional admission, and it was the right of the defendant's counsel to inquire further in regard to it, and to have all that was said upon the subject at the same time.

I think there were other errors committed in excluding evidence on the cross examination of Slingerland, but it is not necessary to examine them at length, for the error I have already pointed out requires a reversal of the judgment.

The judgment must be reversed with costs, and a new trial awarded in the Albany county court.

---

SUPREME COURT.    Monroe General Term, June, 1851.    *Welles, Taylor* and *Johnson* Justices.